# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| AMANDA S.,[1]<br>                    Plaintiff,<br><br>        vs.<br><br>ANDREW M. SAUL,<br>COMMISSIONER OF SOCIAL<br>SECURITY,[2]<br>                    Defendant. | No. 1:19-cv-03115-MKD<br><br>ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT<br><br>ECF Nos. 14, 15 |

---

[1] To protect the privacy of plaintiffs in social security cases, the undersigned identifies them by only their first names and the initial of their last names.

[2] Andrew M. Saul is now the Commissioner of the Social Security Administration. Accordingly, the Court substitutes Andrew M. Saul as the Defendant and directs the Clerk to update the docket sheet. *See* Fed. R. Civ. P. 25(d).

ORDER - 1

Before the Court are the parties' cross-motions for summary judgment. ECF Nos. 14, 15-16.[3] The parties consented to proceed before a magistrate judge. ECF No. 6. The Court, having reviewed the administrative record and the parties' briefing, is fully informed. For the reasons discussed below, the Court grants Plaintiff's motion, ECF No. 14, and denies Defendant's motion, ECF No. 15.

## JURISDICTION

The Court has jurisdiction over this case pursuant to 42 U.S.C. § 1383(c)(3).

## STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Id*. at 1159 (quotation and citation omitted). Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and citation omitted). In determining whether the standard has been satisfied, a

_____

[3] Defendant filed a motion for summary judgment, ECF No. 15, and subsequently filed an amended motion for summary judgment, ECF No. 16, 16-1.

ORDER - 2

reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue,* 674 F.3d 1104, 1111 (9th Cir. 2012). Further, a district court "may not reverse an ALJ's decision on account of an error that is harmless." *Id.* An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id.* at 1115 (quotation and citation omitted). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

## FIVE-STEP EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act. First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). Second, the claimant's impairment must be

ORDER - 3

"of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. § 416.920(a)(4)(i)-(v). At step one, the Commissioner considers the claimant's work activity. 20 C.F.R. § 416.920(a)(4)(i). If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two. At this step, the Commissioner considers the severity of the claimant's impairment. 20 C.F.R. § 416.920(a)(4)(ii). If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three. 20 C.F.R. § 416.920(c). If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(c).

At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude

ORDER - 4

a person from engaging in substantial gainful activity. 20 C.F.R. § 416.920(a)(4)(iii). If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits. 20 C.F.R. § 416.920(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity." Residual functional capacity (RFC), defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations, 20 C.F.R. § 416.945(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work). 20 C.F.R. § 416.920(a)(4)(iv). If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(f). If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. § 416.920(a)(4)(v). In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education and

past work experience. 20 C.F.R. § 416.920(a)(4)(v). If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(g)(1). If the claimant is not capable of adjusting to other work, the analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits. 20 C.F.R. § 416.920(g)(1).

The claimant bears the burden of proof at steps one through four above. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy." 20 C.F.R. § 416.960(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## ALJ'S FINDINGS

On May 6, 2013, Plaintiff applied for Title XVI supplemental security income benefits alleging a disability onset date of May 14, 2008. Tr. 137, 456-67. The application was denied initially, and on reconsideration. Tr. 253-65, 269-80. Plaintiff appeared before an administrative law judge (ALJ) on February 12, 2015. Tr. 40-95. On May 26, 2015, the ALJ denied Plaintiff's claim. Tr. 170-90. On December 22, 2016, the Appeals Council remanded the case to an ALJ to resolve issues involving additional evidence of hand pain submitted in connection with Plaintiff's request for review, the ALJ's failure to make a finding about the effect

of Plaintiff's sleep apnea, and Plaintiff's past relevant work.  Tr. 191-94.  On remand, the Appeals Council instructed the ALJ to obtain additional evidence concerning Plaintiff's medically determinable impairments, give further consideration to Plaintiff's maximum RFC, provide appropriate rationale with specific references to record evidence in support of the assessed limitations, and, if warranted by the expanded record, obtain supplemental evidence from a vocational expert to clarify the effect of the assessed limitations on Plaintiff's occupational base.  Tr. 194.

On December 4, 2017, Plaintiff appeared before the same ALJ for a second hearing.  Tr. 96-120.  On May 31, 2018, the ALJ denied Plaintiff's claim.  Tr. 12-36.  At step one of the sequential evaluation process, the ALJ found that Plaintiff had not engaged in substantial gainful activity since May 6, 2013.  Tr. 17.  At step two, the ALJ found that Plaintiff had the following severe impairments: obesity, asthma, disorders of the female genital organs, chronic venous insufficiency, affective disorders, and anxiety disorders.  Tr. 17.

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of a listed impairment.  Tr. 18.  The ALJ then concluded that Plaintiff had the RFC to perform sedentary work with the following limitations:

> [Plaintiff] can occasionally lift and or carry 10 pounds and 10 pounds frequently; she can stand and or walk with normal breaks for a total of

about 2 hours in an 8-hour workday and sit with normal breaks for a total of about 6 hours in an 8-hour workday; she can frequently balance; she can occasionally climb ramps and stairs, stoop, kneel, crouch, and crawl; she can never climb ladders, ropes, or scaffolds; she should avoid concentrated exposure to extreme cold, extreme heat, hazards (i.e. dangerous machinery, unprotected heights, etc.); and fumes, odors, dusts, gases, and poor ventilation; she can understand and remember simple, routine instructions with customary breaks and lunch; she can sustain concentration, persistence, and pace for the regular completion of simple and repetitive tasks; she can have superficial contact with coworkers for work tasks; there should be no contact with the general public for work tasks; she is not able to perform at a production rate pace (e.g., assembly line work as where the pace is mechanically controlled) but can perform goal oriented work or where the worker has more control over the pace; and she may be off task up to 10% over the course of an 8-hour workday.

Tr. 19-20.

At step four, the ALJ found that Plaintiff had no past relevant work. Tr. 24. At step five, the ALJ found that, considering Plaintiff's age, education, work experience, RFC, and testimony from the vocational expert, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform, such as escort vehicle driver, document preparer, and toy stuffer. Tr. 24-25. Therefore, the ALJ concluded that Plaintiff was not under a disability, as defined in the Social Security Act, from the date of the application though the date of the decision. Tr. 25.

On March 27, 2019, the Appeals Council denied review of the ALJ's decision, Tr. 1-6, making the ALJ's decision the Commissioner's final decision for purposes of judicial review. *See* 42 U.S.C. § 1383(c)(3).

ORDER - 8

**ISSUES**

Plaintiff seeks judicial review of the Commissioner's final decision denying her supplemental security income benefits under Title XVI of the Social Security Act. Plaintiff raises the following issues for review:

1. Whether the ALJ conducted a proper step-two analysis;

2. Whether the ALJ properly evaluated Plaintiff's symptom claims; and

3. Whether the ALJ properly evaluated the medical opinion evidence.

ECF No. 14 at 2, 10-14.

**DISCUSSION**

**A.    Step Two**

Plaintiff faults the ALJ for failing to find at step two that Plaintiff's back and hand pain were severe impairments. ECF No. 14 at 10-14.[4] At step two of the sequential process, the ALJ must determine whether the claimant suffers from a "severe" impairment, i.e., one that significantly limits her physical or mental ability to do basic work activities. 20 C.F.R. § 416.920(c). To show a severe impairment, the claimant must first prove the existence of a physical or mental impairment by providing medical evidence consisting of signs, symptoms, and

_____

[4] Plaintiff did not list a Step Two challenge in the statement of issues, ECF No. 14 at 2, but appears to present such a challenge in the brief, ECF No. 14 at 10-14.

ORDER - 9

laboratory findings; the claimant's own statement of symptoms alone will not suffice. 20 C.F.R. § 416.921.

An impairment may be found to be not severe when "medical evidence establishes only a slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work…." Social Security Ruling (SSR) 85-28 at *3. Similarly, an impairment is not severe if it does not significantly limit a claimant's physical or mental ability to do basic work activities; which include walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; seeing, hearing, and speaking; understanding, carrying out, and remembering simple instructions; using judgment; responding appropriately to supervision, coworkers and usual work situations; and dealing with changes in a routine work setting. 20 C.F.R. § 416.922; SSR 85-28 at *3.[5]

Step two is "a de minimus screening device [used] to dispose of groundless claims." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996). "Thus, applying our normal standard of review to the requirements of step two, [the Court] must

_____

[5] The Supreme Court upheld the validity of the Commissioner's severity regulation, as clarified in SSR 85-28, in *Bowen v. Yuckert*, 482 U.S. 137, 153-54 (1987).

ORDER - 10

determine whether the ALJ had substantial evidence to find that the medical evidence clearly established that [Plaintiff] did not have a medically severe impairment or combination of impairments." *Webb v. Barnhart*, 433 F.3d 683, 687 (9th Cir. 2005).

Here, the ALJ concluded at step two that Plaintiff had the severe impairments of obesity, asthma, disorders of the female genital organs, chronic venous insufficiency, affective disorders, and anxiety disorders. Tr. 17. The ALJ also concluded that Plaintiff's back pain, obstructive sleep apnea, hand pain, and headaches/migraines were non-severe impairments. Tr. 17-18. After detailing the medical evidence pertaining to Plaintiff's non-severe impairments, the ALJ concluded that these impairments did not more than minimally impact Plaintiff's ability to perform basic work activities. Tr. 17-18.

Plaintiff asserts the ALJ erred by finding that her back pain was not a severe impairment, as she was diagnosed with degenerative spondylosis of the lower lumbar spine and a central herniation/protrusion of the L5-S1 disc deforming the thecal sac. ECF No. 14 at 11, n. 2 (citing Tr. 1301, 2284). Although Plaintiff cites treatment notes where these conditions were diagnosed, observed, or reported, the "mere diagnosis of an impairment … is not sufficient to sustain a finding of disability." *Key v. Heckler*, 754 F.2d 1545, 1549 (9th Cir. 1985). Plaintiff identifies no evidence in the record that minimal degenerative spondylosis of the

ORDER - 11

lower lumbar spine, or a central protrusion of the L5-S1 disc had any impact on her basic work abilities. ECF No. 14 at 10-12; *see* Tr. 1301, 2284. While there were notations in the medical record that Plaintiff endorsed symptoms of back pain, *see, e.g.*, Tr. 947, 1289, 2210, 2230, 2244, the ALJ's finding that Plaintiff's back condition was not a severe impairment is supported by the objective medical evidence. *See, e.g.,* Tr. 1307 (January 2015: imaging of Plaintiff's spine showed only mild spondylosis with disc space narrowing, but no acute fracture or subluxation); Tr. 1279, 1282 (April 2015: Plaintiff's doctor denied narcotics for pain because Plaintiff's lumbar and thoracic x-rays did not support a back pain diagnosis); Tr. 1301 (May 2015: an MRI of Plaintiff's spine showed a central herniation/protrusion of the L5-S1 disc with otherwise unremarkable findings); Tr. 1272-73 (June 2015: after reviewing Plaintiff's MRI results, Plaintiff's doctor recommended conservative treatment with postural and bra adjustments; he also performed osteopathic manipulative treatment which resulted in improved pain levels); Tr. 1305 (January 2016: images of Plaintiff's thoracic spine showed only mild scoliosis with spondylosis); Tr. 2284 (October 2017: x-rays of Plaintiff's lumbar spine revealed only minimal degenerative spondylosis of the lower lumbar spine); Tr. 1097, 1289, 2210, 2230, 2244, 2254, 2411 (June 2014, March 2015, March 2016, May 2016, November 2016, April 2017, and June 2017: examinations

consistently showed normal gait and station).  On this record, the ALJ reasonably concluded that Plaintiff's back pain was not a severe impairment.  Tr. 17-18.

Plaintiff also argues the ALJ erred by finding that her hand pain was not a severe impairment, asserting that she was diagnosed with carpal tunnel syndrome. ECF No. 14 at 13-14.  The "mere diagnosis of an impairment … is not sufficient to sustain a finding of disability."  *Key*, 754 F.2d at 1549.  Again, Plaintiff identifies no evidence in the record that her hand pain had any impact on her basic work abilities. ECF No. 14 at 13-14.  While there were notations in the medical record that Plaintiff endorsed symptoms of hand pain, the ALJ's finding that Plaintiff's hand condition was not a severe impairment is supported by the objective medical evidence.  *See, e.g.,* Tr. 1296 (January 2015: Plaintiff reported a one-week history of hand pain, and on physical examination she had poor movement of her hands bilaterally but she had no numbness[6] or lack of feeling); Tr. 1281-83, 1294

---

[6] Plaintiff contends the ALJ's finding that she "had no numbness or lack of feeling" in her hands was contrary to the medical record.  ECF No. 14 at 13 (citing Tr. 18).  However, the ALJ referenced a specific physical examination in January 2015 when Plaintiff reported one-week of hand pain and she had no numbness or lack of feeling on examination.  Tr. 18 (citing Tr. 1296).  The ALJ's finding is not contrary to the medical record.

(February and April 2015: Plaintiff received injections for her hand pain and reported improvement); Tr. 1294 (February 2015: Plaintiff reported that she "knits for an activity"); Tr. 65 (February 2015: at Plaintiff's first hearing, she testified that her doctor was trying to determine whether she had arthritis in her hands or carpal tunnel syndrome); Tr. 1283-84 (April 2015: Plaintiff exhibited a positive Tinel's sign and complained of left hand pain, hand tingling, and left hand numbness; her doctor assessed neuropathic pain of the hand and indicated that it was "possibly" carpal tunnel syndrome); Tr. 2069 (April 2017: Plaintiff reported that she enjoyed doing crafts, crocheting, and coloring). On this record, the ALJ reasonably concluded that Plaintiff's hand pain was not a severe impairment.

Moreover, Plaintiff has failed to establish any harmful error resulting from the ALJ's decision to find that her back and hand conditions were non-severe impairments. Even if the ALJ should have determined that her back and hand conditions were severe impairments, any error would be harmless because the step was resolved in Plaintiff's favor. *See Stout v. Comm'r of Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006); *Burch v. Barnhart*, 400 F.3d 676, 682 (9th Cir. 2005). Plaintiff makes no showing that either of these conditions created limitations not already accounted for in the RFC. *See Shinseki*, 556 U.S. at 409-10

(the party challenging the ALJ's decision bears the burden of showing harm).

Thus, the ALJ's step two finding is legally sufficient.

## B.     Plaintiff's Symptom Claims

Plaintiff faults the ALJ for failing to rely on clear and convincing reasons in discrediting her symptom claims. ECF No. 14 at 6-14. An ALJ engages in a two-step analysis to determine whether to discount a claimant's testimony regarding subjective symptoms. SSR 16–3p, 2016 WL 1119029, at *2. "First, the ALJ must determine whether there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Molina*, 674 F.3d at 1112 (quotation marks omitted). "The claimant is not required to show that [the claimant's] impairment could reasonably be expected to cause the severity of the symptom [the claimant] has alleged; [the claimant] need only show that it could reasonably have caused some degree of the symptom." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009).

Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (citations omitted). General findings are insufficient; rather, the ALJ must identify what symptom claims are being discounted and what evidence undermines these claims.

*Id.* (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995); *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) (requiring the ALJ to sufficiently explain why it discounted claimant's symptom claims)). "The clear and convincing [evidence] standard is the most demanding required in Social Security cases." *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).

Factors to be considered in evaluating the intensity, persistence, and limiting effects of a claimant's symptoms include: 1) daily activities; 2) the location, duration, frequency, and intensity of pain or other symptoms; 3) factors that precipitate and aggravate the symptoms; 4) the type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms; 5) treatment, other than medication, an individual receives or has received for relief of pain or other symptoms; 6) any measures other than treatment an individual uses or has used to relieve pain or other symptoms; and 7) any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms. SSR 16-3p, 2016 WL 1119029, at *7; 20 C.F.R. § 416.929(c)(3). The ALJ is instructed to "consider all of the evidence in an individual's record," "to determine how symptoms limit ability to perform work-related activities." SSR 16-3p, 2016 WL 1119029, at *2.

ORDER - 16

The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms, but that Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the evidence.  Tr. 20-21.

### 1.  Not Supported by Objective Medical Evidence

The ALJ found that Plaintiff's symptom complaints were not supported by the objective medical evidence.  Tr. 21-23.  An ALJ may not discredit a claimant's symptom testimony and deny benefits solely because the degree of the symptoms alleged is not supported by the objective medical evidence.  *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); *Bunnell v. Sullivan*, 947 F.2d 341, 346-47 (9th Cir. 1991).  However, the objective medical evidence is a relevant factor, along with the medical source's information about the claimant's pain or other symptoms, in determining the severity of a claimant's symptoms and their disabling effects.  *Rollins*, 261 F.3d at 857; 20 C.F.R. § 416.929(c)(2).

### a.  Mental Impairments

The ALJ found that the mental status examinations in the record did not support Plaintiff's allegations of disabling mental health impairments, such as anxiety, flashbacks, depressive episodes, and difficulty being around many people. Tr. 22-23; *see* Tr. 939, 941-42 (May 29, 2013: upon mental status examination by Mark Duris, Ph.D., Plaintiff demonstrated normal speech, was "generally open,

cooperative and relatively genuine in her responses," her mood was "generally euthymic" with normal affect, and she had normal thought process and content, orientation, perception, memory, fund of knowledge, concentration, abstract thought, and insight and judgment; Dr. Duris diagnosed Plaintiff with PTSD, moderate major depressive disorder, recurrent, ADHD, borderline personality disorder, and dependent personality disorder); Tr. 1172 (December 10, 2014: upon mental status examination during a crisis assessment, Plaintiff presented as pleasant and cooperative, showed full range of emotion, was congruent to topic, had clear and spontaneous speech, good eye contact, appropriate dress, intact and goal directed thoughts, no evidence of thought disorder or delusional content, her insight and judgment were fair, and she reported no hallucinations, but she endorsed PTSD symptoms, suicidal thoughts, and self-harm action (burning)); Tr. 2230 (November 14, 2016: at a visit for physical pain management, William Powell, DO, conducted a mental status examination and found Plaintiff to have normal thought content with the ability to perform basic computations and apply abstract reasoning, intact associations, appropriate judgment and insight, no evidence of hallucinations, delusions, obsessions, or homicidal/suicidal ideation, and Plaintiff was happy, stable, and not anxious); Tr. 2250 (April 26, 2016: same); Tr. 2262 (December 8, 2015: same); Tr. 2265 (October 27, 2015: same); Tr. 2194 (June 2017: at a visit for physical pain management, Clint Thompson, DO,

conducted a mental status examination and determined that Plaintiff had a robust sense of humor and a bright affect); Tr. 2492 (January 4, 2017: Plaintiff was taking her medications as prescribed with no negative side effects, she had only one flashback in the prior two weeks triggered by conflict with her roommate, her mood was a "little stressed but good," and her affect was congruent with range and humor); Tr. 2070, 2072 (April 19, 2017: upon mental status examination by Danielle Jenkins, Psy.D., Plaintiff's memory, concentration, perception, fund of knowledge, and insight and judgment were all within normal limits; Dr. Jenkins diagnosed Plaintiff with chronic PTSD and unspecified personality disorder).

However, as argued by Plaintiff, the ALJ's discussion of the mental health medical evidence largely omits Plaintiff's therapy records, which consistently document anxious, tearful, depressed, and distressed moods. *See* Tr. 752, 834, 878, 951, 999, 1048, 1097, 1099, 1132, 1133, 1135, 1177, 1277, 1297, 1519, 1596, 1737, 1738, 1741, 1747, 1749, 2065, 2179, 2207, 2215, 2226, 2270, 2275, 2287, 2343 (anxious); Tr. 752, 988, 996, 1031, 1034, 1062, 1067, 1100, 1120, 1122, 1126, 1130, 1149, 1152, 1156, 1158, 1160, 1169, 1225, 1229, 1596, 1623, 1626, 1632, 1637, 1639, 1641, 1663, 1685, 1688, 1710, 1712, 1725, 1761, 1763, 1857, 1861, 1863, 1866, 1875, 1879, 1881, 1887, 1905, 1911, 1917, 1921, 1923, 1927, 1933, 1937, 1939, 1941, 1946, 1950, 1954, 1957, 1964, 1970, 1982, 2116, 2343, 2361, 2367, 2371, 2373, 2382, 2388, 2398, 2400, 2419, 2426, 2458, 2468, 2477,

2481, 2485, 2490 (tearful); Tr. 768, 1048, 1049, 1051, 1096, 1097, 1099, 1116, 1122, 1177, 1207, 1209, 1210, 1623, 1626, 1887, 1913, 1962, 2253, 2391, 2538 (depressed or sad); Tr. 1156, 1685, 1763, 1843, 1855, 1879, 1891, 1982, 2116, 2367, 2466, 2490 (distressed); Tr. 1031, 1048, 1071, 1725, 1859, 1913, 2400, 2477, 2538 (irritable); Tr. 951, 981, 1243, 1297, 2270, 2287 (unkempt); Tr. 1152 (struggling to manage dysregulation); Tr. 1957, 2398 (visibly frightened); Tr. 878 (pressured speech); Tr. 995, 1177, 1319 (fleeting or little eye contact); Tr. 1049, 1097, 1133, 1177, 1210, 1574, 1596 (tense posture). Further, Plaintiff's therapy records show continued flashbacks, nightmares, intrusive thoughts, feelings of panic, and thoughts of suicide. *See* Tr. 999 (July 26, 2013: continued nightmares and flashbacks, increase in their frequency); Tr. 1152 (December 5, 2013: constant intrusive thoughts of traumas, no flashbacks, passing thoughts of suicidal intent); Tr. 1130 (February 27, 2014: "only two flashbacks last week"); Tr. 1126 (March 13, 2014: one flashback during the past week); Tr. 1067 (August 20, 2014: no flashbacks, but passing thoughts of suicidal intent); Tr. 1062 (August 27, 2014: passing thoughts of suicidal intent); Tr. 1049 (September 9, 2014: suicidal thoughts); Tr. 1207 (December 10, 2014: Plaintiff noticed a decrease in flashbacks, from 10 a week down to four a week, a decrease in anxiety, but an increase in suicidal thoughts with a plan); Tr. 1596 (February 10, 2015: Plaintiff experienced "what appeared to be a panic attack" while at the Horizons clubhouse); Tr. 1688

ORDER - 20

(June 26, 2015: Plaintiff experienced feelings of shame and panic associated with housework); Tr. 1913 (July 8, 2016: increased depression over the prior two months and getting progressively worse); Tr. 1911 (July 15, 2016: "triggered for a few flashbacks" during the past week, was able to prevent a flashback from occurring on several occasions); Tr. 1861 (October 19, 2016: daily nightmares, flashbacks of abuse events); Tr. 2485 (January 27, 2017: several flashbacks over the past week); Tr. 2388 (July 12, 2017: a recent flashback and two episodes of enuresis paired with nightmares about specific trauma).  The ALJ must consider all of the relevant evidence in the record and may not point to only those portions of the records that bolster his findings.  *See, e.g., Holohan v. Massanari*, 246 F.3d 1195, 1207-08 (9th Cir. 2001) (holding that an ALJ cannot selectively rely on some entries in a claimant's records while ignoring others); *see also Norman v. Berryhill*, No. 17-CV-04108-SI, 2018 WL 4519952, at *9 (N.D. Cal. Sept. 19, 2018) (unpublished) (ALJ may not discount a claimant's testimony that she was depressed on the basis of mental status examinations by providers who diagnosed the claimant with clinical depression); *see also Ghanim*, 763 F.3d at 1164 (The Ninth Circuit found the ALJ improperly rejected the symptom testimony of a claimant who reported depression and social anxiety, stating the ALJ "improperly cherry-picked some of [the examining physician's] characterizations of Ghanim's rapport and demeanor instead of considering these factors in the context of [the

physician's] diagnoses and observations of impairment."). The Commissioner

asserts that Plaintiff's competing interpretation of the evidence must fail. ECF No.

16-1 at 11. However, the ALJ selectively discussed the mental impairment

evidence of record. Tr. 22-23. In citing portions of the record that show milder

examination findings while the longitudinal record shows more mixed results, the

ALJ's characterization of the record is not supported by substantial evidence.

### b. Physical Impairments

The ALJ discussed Plaintiff's alleged physical symptoms that caused her to

be unable to work, such as issues with her weight and chronic pain, and determined

that Plaintiff's physical complaints were out of proportion to the objective medical

evidence. Tr. 21. As to Plaintiff's claims of limitation due to her obesity, the ALJ

found that although her weight remained in the obesity range, she had not

developed secondary complications due to her weight such as diabetes or heart

disease. Tr. 21 (citing Tr. 1273, 1277, 1283, 1286, 1289, 2229, 2243, 2275). The

ALJ also noted that Plaintiff's doctor reported she had lost 30 pounds in two to

three months, and Plaintiff was trying to get approval for bariatric surgery. Tr. 21

(citing Tr. 2277). The ALJ failed to identify what in Plaintiff's symptom

testimony was inconsistent with the evidence or to explain how the evidence was

inconsistent. Indeed, the ALJ's reasoning is unclear because some of the evidence

identified by the ALJ could reasonably support Plaintiff's symptom allegations.

ORDER - 22

*See* Tr. 1273, 1277, 1283, 1286, 1289, 2229, 2243, 2275 (Plaintiff's weight

remained in the obesity range); Tr. 2277 (July 23, 2015: Plaintiff was trying to get

approval for bariatric surgery). The ALJ failed to sufficiently explain why the

claims were discredited. *Thomas*, 278 F.3d at 958.

The ALJ also noted that despite Plaintiff's ongoing diagnosis of asthma, her

symptoms improved with Albuterol when treated for acute exacerbation of asthma

stemming from pneumonia/wheezing, and physical examinations consistently

showed normal respiratory examination findings. Tr. 21 (citing Tr. 981, 1282,

1284-87). The ALJ observed that Plaintiff complained of leg pain and the state

agency medical consultant found the record supported a diagnosis of chronic

venous insufficiency, but physical examinations consistently showed no edema,

normal gait, and normal station. Tr. 21 (citing Tr. 1289, 1292, 2234, 2250, 2259).

The ALJ stated that although Plaintiff presented at the hearing with a cane, there

was no objective evidence to support that a cane was medically necessary. Tr. 22

(citing Tr. 2178, 2180). Finally, the ALJ found that Plaintiff had a history of

polycystic ovarian syndrome, but she underwent a hysterectomy in July 2014 and

later reported she was feeling well with good energy, and there were no ongoing

related complaints. Tr. 22 (citing Tr. 949, 1246, 1244-45, 2178, 2185, 2192,

2197). The record supports the ALJ's conclusion that Plaintiff's asthma was

controlled with medication, Plaintiff consistently had a normal gait and station and

ORDER - 23

there was no objective evidence that a cane was medically necessary, and that

Plaintiff did not have ongoing problems related to polycystic ovarian syndrome.

Tr. 21-22. However, Plaintiff did not testify in either of her hearings to functional

limitations caused by asthma, chronic venous insufficiency, or polycystic ovarian

syndrome, nor are these impairments a primary basis for Plaintiff's claim of

disability. Tr. 516-24, 567-75, 612-19. The ALJ did not explain how the fact that

Plaintiff's asthma was controlled with medication, chronic venous insufficiency

did not cause a gait disturbance, or polycystic ovarian syndrome did not cause

ongoing problems, undermined Plaintiff's symptom testimony as to her limitations

stemming from obesity and chronic pain, which form the basis of Plaintiff's claim

for disability. Tr. 21-22; *Ghanim*, 763 F.3d at 1163 (requiring the ALJ to

sufficiently explain why it discounted claimant's symptom claims). Without more

explanation of how this evidence undermined Plaintiff's symptom reporting, this

was not a clear and convincing reason to discredit Plaintiff's testimony as to her

physical impairments.

    2. *Inconsistent with Activities*

    The ALJ found that Plaintiff's activities were inconsistent with the level of

impairment Plaintiff alleged. Tr. 21, 23. An ALJ may consider a claimant's

activities that undermine reported symptoms. *Rollins*, 261 F.3d at 857. If a

claimant can spend a substantial part of the day engaged in pursuits involving the

performance of exertional or nonexertional functions, the ALJ may find these activities inconsistent with the reported disabling symptoms. *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989); *Molina*, 674 F.3d at 1113. "While a claimant need not vegetate in a dark room in order to be eligible for benefits, the ALJ may discount a claimant's symptom claims when the claimant reports participation in everyday activities indicating capacities that are transferable to a work setting" or when activities "contradict claims of a totally debilitating impairment." *Molina*, 674 F.3d at 1112-13.

### a. Mental Impairments

The ALJ found that Plaintiff's activities were inconsistent with her claims of difficulty being around many people. Tr. 23; *see* Tr. 990 (September 2013: Plaintiff was spending more time in positive social contacts); Tr. 2343 (March 2017: Plaintiff attended a birthday/graduation party); Tr. 2339 (May 2017: Plaintiff made bread for an anniversary BBQ and she was active in helping the culinary unit get prepared with different sides dishes); Tr. 2390 (July 2017: Plaintiff volunteered at the Needle Exchange as a survey taker). However, Plaintiff's treatment notes demonstrate that she continued to have some difficulty in these social situations. *See, e.g.,* Tr. 1596 (February 10, 2015: while at the Horizons clubhouse, Plaintiff "was initially social and engaging with her peers" until she "experienced what appeared to be a panic attack and medical staff was informed and asked to see

ORDER - 25

her," she "returned to her normal state after approximately 45 minutes from onset of expression," and after lunch and more socializing with her peers, Plaintiff was "feeling very fatigued"); Tr. 2333 (June 2, 2017: Plaintiff became involved in a "heated discussion" with a staff member); Tr. 2331 (June 8, 2017: Plaintiff was noted to be "working on interpersonal issues with another member"); Tr. 2322 (August 3, 2017: Plaintiff manifested aggressive behavior). Further, although Plaintiff attended a birthday/graduation party in March 2017, as cited by the ALJ, she expressed a great deal of anxiety attending this social event and "appeared to have a good time . . . until she disagreed with peers and felt they were laughing at her. She became tearful and talked at length with staff." Tr. 2343. Moreover, the same therapy note cited by the ALJ to indicate that Plaintiff enjoyed volunteering as a survey taker also reported her anxiety had decreased but her depression symptoms had increased, and she had been engaging in self-harm by poking herself with pins until she bled. Tr. 2390. The ALJ's conclusion that Plaintiff's activities were inconsistent with her alleged difficulty being around many people is not supported by substantial evidence. Plaintiff testified that she does not like being around "that many people" because her "anxiety flares." Tr. 110. Plaintiff's ability to attend one birthday/graduation party, actively participate in helping prepare different side dishes for one BBQ, and volunteer at the Needle Exchange, along with a treatment note acknowledging her report that she was spending more

time in positive social contacts, when considered in the context of the record as a whole, are not inconsistent with the limitations Plaintiff reported.  This finding is not supported by substantial evidence.

b.  Physical Impairments

The ALJ also concluded that Plaintiff's activities were inconsistent with the physical limitations she alleged.  Tr. 21.  The ALJ observed that although Plaintiff testified to limited exercise such as walking one block, Tr. 112, she also reported physical activities including walking daily, walking with her housemate and her housemate's dog, going to the pool two times per week, and pulling weeds in a garden.  Tr. 21; *see* Tr. 2069, 2331, 2537.

Plaintiff challenges the ALJ's finding by asserting that "[b]ecause the record does not specify how long she walked, swam, or pulled weeds, it is not clear that there is an inconsistency in these reports."  ECF No. 14 at 13.  Plaintiff testified that she is sometimes able to walk partially around the block, but that can take up to an hour.  Tr. 122.  In finding Plaintiff's physical activities inconsistent with her testimony, the ALJ never addressed the frequency or length of Plaintiff's reported walks.  Tr. 21.  He failed to cite to any evidence that Plaintiff walked for exercise or walked with her housemate and her housemate's dog in any manner that was inconsistent with the testimony Plaintiff provided about her limitations.  Tr. 21; *see Jordan v. Astrue*, 262 F. App'x 843, 845 (9th Cir. 2008) (unpublished) (claimant's

ability to do some therapeutic exercises was not inconsistent with allegation that he needed to lie down regularly to alleviate pain).  Moreover, the ALJ failed to explain how Plaintiff's report that she went to the pool or pulled weeds in a garden were inconsistent with her testimony about her level of physical activity.  Tr. 21.  Rather, Plaintiff testified at her first hearing that when in the pool she would "walk from the shallow end to just before the deep end" and then walk back for "gentle exercise."  Tr. 79.  Therefore, this reason to discredit Plaintiff's symptom testimony is not specific, clear and convincing.

### 3.  *Mental Health Symptoms Improved with Treatment*

The ALJ discounted Plaintiff's mental health symptom claims as inconsistent with her improvement with treatment.  Tr. 22-23.  The effectiveness of treatment is a relevant factor in determining the severity of a claimant's symptoms.  20 C.F.R. § 416.929(c)(3) (2017); *Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006) (determining that conditions effectively controlled with medication are not disabling for purposes of determining eligibility for benefits); *Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008) (recognizing that a favorable response to treatment can undermine a claimant's complaints of debilitating pain or other severe limitations).

The ALJ noted that Plaintiff reported improvements in her mental health symptoms with treatment and medications.  Tr. 22-23; *see* Tr. 990 (September

ORDER - 28

2013: Plaintiff described effective use of containment strategies for intrusive thoughts and flashbacks); Tr. 1140 (January 2014: Plaintiff reported that she was benefitting from a medication trial and sleeping through the night); Tr. 1128 (March 2014: Plaintiff reported that her mood was better and she had a "significant decrease" in nightmares and flashbacks); Tr. 2492 (January 2017: Plaintiff was taking her medications as prescribed with no negative side effects; she reported that she had only one flashback in the past two weeks triggered by conflict with her roommate).

Although the ALJ provided several references to treatment notes to show that Plaintiff's mental health symptoms were improving with treatment and medication at certain times throughout the relevant period, the ALJ relied on these few instances to conclude more broadly that Plaintiff's mental health condition overall improved with treatment. Observations of improvement must be "read in context of the overall diagnostic picture" of an individual, and improvement in some symptoms does not indicate nondisability under the Social Security Act. *Ghanim*, 763 F.3d at 1161-62 (quoting *Holohan*, 246 F.3d at 1205). The ALJ is not permitted to "cherry pick" from mixed evidence to support a denial of benefits. *Garrison*, 759 F.3d at 1017 n.23. The ALJ's selection of treatment notes indicating some intermittent improvement in her mental symptoms do not represent overall improvement when read in the context of the entire 2,500-page

ORDER - 29

record. As discussed *supra*, Plaintiff continued to experience flashbacks, nightmares, intrusive thoughts, depression, feelings of panic, and thoughts of suicide despite her use of medication and participation in treatment. *See, e.g.,* Tr. 1062 (August 27, 2014: Plaintiff reported taking medications as prescribed and had passing thoughts of suicidal intent); Tr. 1207 (December 10, 2014: Plaintiff reported her response to new medications was "pretty good actually," and she noticed a decrease in flashbacks, from 10 a week down to four a week, along with a decrease in anxiety, but she experienced an increase in suicidal thoughts with a plan); Tr. 1596 (February 10, 2015: Plaintiff experienced "what appeared to be a panic attack" while at the Horizons clubhouse, and the treatment note describing the episode stated she "will continue with clubhouse for support toward treatment plan goals, follow up with medical staff and primary therapist"); Tr. 1913 (July 8, 2016: Plaintiff reported taking all medications as prescribed, she experienced increased depression over the past two months, and her depression was getting progressively worse); Tr. 1911 (July 15, 2016: Plaintiff reported taking medications as prescribed and "triggered for a few flashbacks" during the past week, though she was able to prevent a flashback from occurring on several occasions); Tr. 1861 (October 19, 2016: Plaintiff reported taking medications as prescribed and described daily nightmares and flashbacks of abuse events); Tr. 2485 (January 27, 2017: Plaintiff reported taking medications as prescribed and

reported several flashbacks over the past week); Tr. 2388 (July 12, 2017: Plaintiff reported taking medications as prescribed and described a recent flashback and two episodes of enuresis paired with nightmares about specific trauma). The ALJ's conclusion that Plaintiff's mental health symptoms improved with treatment and medication based on the few select notations of improvement is not supported by the longitudinal record. *See Garrison*, 759 F.3d at 1017 ("[c]ycles of improvement and debilitating symptoms are a common occurrence, and in such circumstances it is error for an ALJ to pick out a few isolated instances of improvement over a period of months or years and to treat them as a basis for concluding a claimant is capable of working."); *see also Holohan*, 246 F.3d at 1205 ("[The treating physician's] statements must be read in context of the overall diagnostic picture he draws. That a person who suffers from severe panic attacks, anxiety, and depression makes some improvement does not mean that the person's impairments no longer seriously affect her ability to function in a workplace."). This was not a clear and convincing reason to discredit Plaintiff's symptom testimony.

As discussed *supra*, the reasons the ALJ provided to discredit Plaintiff's mental and physical symptom testimony are not supported by substantial evidence. *Ghanim*, 763 F.3d at 1163. Further, the ALJ's selective discussion of the mental impairment evidence also informed the ALJ's evaluation of several medical opinions. Tr. 22-24, 179-80. The Court "may not reverse an ALJ's decision on

account of an error that is harmless." *Molina*, 674 F.3d at 111. An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id*. at 1115 (quotation and citation omitted). The ALJ's errors are not harmless. On remand, the ALJ is instructed to reconsider the evidence of Plaintiff's mental impairments and to take testimony from a mental health medical expert. The ALJ shall also reconsider Plaintiff's mental and physical symptom testimony.

## C. Medical Opinion Evidence

Plaintiff challenges the ALJ's evaluation of the medical opinions of Ginger Longo, M.D., Mara Fusfield, ARNP, Norman Staley, M.D., Mark Duris, Ph.D., Rebekah Cline, Psy.D., Danielle Jenkins, Psy.D., Jamie Walker, ARNP, Mary Day, MS, Vincent Gollogly, Psy.D., and Patricia Kraft, Ph.D. ECF No. 14 at 14-21.

There are three types of physicians: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant [but who review the claimant's file] (nonexamining [or reviewing] physicians)." *Holohan*, 246 F.3d at 1201-02 (citations omitted). Generally, a treating physician's opinion carries more weight than an examining physician's opinion, and an examining physician's opinion carries more weight than a reviewing physician's opinion. *Id.* at 1202. "In addition, the regulations give more weight to

opinions that are explained than to those that are not, and to the opinions of specialists concerning matters relating to their specialty over that of nonspecialists." *Id.* (citations omitted).

If a treating or examining physician's opinion is uncontradicted, the ALJ may reject it only by offering "clear and convincing reasons that are supported by substantial evidence." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). "However, the ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2011) (internal quotation marks and brackets omitted). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Bayliss*, 427 F.3d at 1216 (citing *Lester*, 81 F.3d at 830–31). The opinion of a nonexamining physician may serve as substantial evidence if it is supported by other independent evidence in the record. *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995).

"Only physicians and certain other qualified specialists are considered '[a]cceptable medical sources.' " *Ghanim*, 763 F.3d at 1161 (alteration in original);

*see* 20 C.F.R. § 416.913 (2013).[7]  However, an ALJ is required to consider evidence from non-acceptable medical sources.  *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987); 20 C.F.R. § 416.913(d) (2013).  "Other sources" include nurse practitioners, physicians' assistants, therapists, teachers, social workers, spouses and other non-medical sources.  20 C.F.R. § 416.913(d) (2013).  An ALJ may reject the opinion of a non-acceptable medical source by giving reasons germane to the opinion.  *Ghanim*, 763 F.3d at 1161.

### 1. Dr. Longo

On June 26, 2013, Plaintiff's treating gynecologist, Ginger Longo, M.D., opined that it was difficult for Plaintiff to perform many physical activities due to her weight and ability to sustain increased activity.  Tr. 957.  She also opined that Plaintiff had difficulty being out in public because of issues with anxiety and PTSD, which would also limit her ability to perform at a consistent level of employment.  Tr. 957.  Dr. Longo noted that Plaintiff was working on improving these limitations, "but is not quite ready to enter into a position of steady employment."  Tr. 957.

---

[7] For cases filed prior to March 27, 2017, the definition of an acceptable medical source, as well as the requirement that an ALJ consider evidence from non-acceptable medical sources, are located at 20 C.F.R. § 416.913 (2013).

ORDER - 34

The ALJ gave Dr. Longo's opinion little weight.[8]  Tr. 180.  Because Dr. Longo's opinion was contradicted by the nonexamining opinion of Norman Staley, M.D., Tr. 154-69., the ALJ was required to provide specific and legitimate reasons for discounting Dr. Longo's opinion.  *Bayliss*, 427 F.3d at 1216.

### a.  Inadequate Explanation

The ALJ rejected Dr. Longo's opinion because she did not include any examination findings in support of her opinion.  Tr. 180.  The Social Security regulations "give more weight to opinions that are explained than to those that are not."  *Holohan*, 246 F.3d at 1202.  "[T]he ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory and inadequately supported by clinical findings."  *Bray*, 554 F.3d at 1228.  Relevant factors to evaluating any medical opinion include the amount of relevant evidence that supports the opinion, the quality of the explanation provided in the opinion, and the consistency of the medical opinion with the record.  *Lingenfelter v. Astrue*, 504 F.3d 1028, 1042 (9th Cir. 2007); *Orn v. Astrue,* 495 F.3d 625, 631 (9th Cir.

---

[8] The ALJ gave Dr. Longo's opinion little weight in his first decision.  Tr. 180. The Appeals Council did not disturb the ALJ's findings or assessment regarding Dr. Longo, and the ALJ adopted and incorporated his assessment and discussion of Dr. Longo's opinion in his second decision.  Tr. 23.

2007). Here, Dr. Longo's June 26, 2013 letter simply stated that it was difficult for

Plaintiff to perform many physical activities due to her weight and ability to

sustain increased activity, she had difficulty being out in public because of issues

with anxiety and PTSD, which would limit her ability to perform at a consistent

level of employment, and Plaintiff was "not quite ready to enter into a position of

steady employment." Tr. 957. The ALJ was correct that Dr. Longo did not cite

any examination findings in support of her opinion. However, that Dr. Longo did

not include any examination findings in support of her opinion is not enough by

itself to discount her treating opinion if it was otherwise adequately supported by

Dr. Longo's medical notes. *See Garrison*, 759 F.3d at 1014 n.17; *see also Trevizo

v. Berryhill*, 871 F.3d 664, 667 n.4 (9th Cir. 2017). Plaintiff's treatment notes

show that Dr. Longo regularly counseled Plaintiff on weight loss. Tr. 958, 961,

964, 966. However, Plaintiff consistently reported no back pain, joint pain, or

fatigue during her visits with Dr. Longo, and treatment was focused on

menorrhagia and placement and removal of an intrauterine device. Tr. 958-59,

961-62, 964-67. Dr. Longo's opinion was not adequately supported by her

treatment notes. Moreover, even if the ALJ erred by discounting Dr. Longo's

opinion because she did not include any examination findings in support of her

opinion, this error is harmless because, as discussed *infra*, Dr. Longo's opinion

was vague and she failed to provide any functional limitations. Further, Plaintiff

did not challenge this reason articulated by the ALJ, thus any challenge is waived. *Kim v. Kang*, 154 F.3d 996, 1000 (9th Cir. 1998) (the Court may not consider on appeal issues not "specifically and distinctly argued" in the party's opening brief).

### b. Opines No Functional Limitations

The ALJ discredited Dr. Longo's opinion because it was vague and she failed to specifically state how Plaintiff would be limited. Tr. 180. An ALJ may reject an opinion that does "not show how [a claimant's] symptoms translate into specific functional deficits which preclude work activity." *See Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 601 (9th Cir. 1999). Dr. Longo's opinion was vague, as she simply stated it was difficult for Plaintiff to perform many physical activities due to her weight and ability to sustain increased activity, and she was not quite ready to enter into a position of steady employment. Tr. 957. Dr. Longo provided no further explanation of her opinion about Plaintiff's capacity to work. She did not provide any function-by-function analysis of Plaintiff's limitations, nor detail what physical activities would be difficult for Plaintiff to perform. The ALJ reasonably discredited these findings as vague and not sufficiently explained. Tr. 180. This was a specific and legitimate reason to discredit Dr. Longo's opinion.

### 2. Ms. Fusfield

On March 24, 2017, Mara Fusfield, ARNP, completed a physical functional evaluation and diagnosed Plaintiff with back pain, arthritis, spinal stenosis, obesity,

polycystic ovarian syndrome, and PTSD. Tr. 2061-63. She determined that

Plaintiff could only walk for one and a half blocks, stand for three to four minutes,

not carry any weight, and lift less than 20 pounds. Tr. 2062. Ms. Fusfield also

found that pulling was a problem for Plaintiff, but pushing was okay. Tr. 2062.

She noted that Plaintiff's PTSD decreased her ability to communicate, Plaintiff

heard things from the past that were not there, and she experienced flashbacks. Tr.

2062. Ms. Fusfield opined that Plaintiff was severely limited and unable to meet

the demands of sedentary work. Tr. 2063. The ALJ gave Ms. Fusfield's opinion

little weight. Tr. 23. Because Ms. Fusfield was an "other source," the ALJ was

required to provide germane reasons to discount her opinion. *Dodrill v. Shalala*,

12 F.3d 915, 918 (9th Cir. 1993).

The ALJ noted that Ms. Fusfield's opinion was inconsistent with her

treatment notes and Plaintiff's generally benign physical examinations that were

administered by Ms. Fusfield. Tr. 23. A medical opinion may be rejected if it is

unsupported by medical findings. *Bray*, 554 F.3d at 1228; *Batson v. Comm'r of

Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004); *Thomas*, 278 F.3d at 957;

*Tonapetyan v. Halter,* 242 F.3d 1144, 1149 (9th Cir. 2001); *Matney v. Sullivan*,

981 F.2d 1016, 1019 (9th Cir.1992). Furthermore, a physician's opinion may be

rejected if it is unsupported by the physician's treatment notes. *Connett v.

Barnhart*, 340 F.3d 871, 875 (9th Cir. 2003). Relevant factors to evaluating any

medical opinion include the amount of relevant evidence that supports the opinion,

the quality of the explanation provided in the opinion, and the consistency of the

medical opinion with the record as a whole. *Lingenfelter*, 504 F.3d at 1042; *Orn*,

495 F.3d at 631. During Plaintiff's March 2017 office visit, Ms. Fusfield noted

that Plaintiff's greatest challenge was her weight. Tr. 2214. Consistent with that

observation, Ms. Fusfield primarily encouraged weight loss and smoking cessation

during medical visits with Plaintiff. Tr. 1295, 2187, 2190, 2207, 2215. While Ms.

Fusfield also noted in March 2017 that Plaintiff had arthritis in her lumbar spine

with stenosis and some spinal stenosis in her neck, she indicated moderate

tenderness of Plaintiff's spine with an otherwise unremarkable physical

examination. Tr. 2214-15. Physical examinations by Ms. Fusfield throughout the

relevant period were generally benign. Tr. 1294-95, 2187, 2190, 2206-07, 2215.

This was a germane reason to discount Ms. Fusfield's opined limitations.

### 3. Dr. Staley

On October 2, 2013, state agency medical consultant Norman Staley, M.D.,

reviewed the medical record and opined that Plaintiff could frequently and

occasionally lift and/or carry 10 pounds, stand and/or walk for two hours, and sit

for more than six hours on a sustained basis in an eight-hour workday. Tr. 154-69.

He determined that Plaintiff could frequently stoop, occasionally climb ramps and

stairs, kneel, crouch, and crawl, and never climb ladders, ropes, or scaffolds due to

her obesity.  Tr 164.  Dr. Staley noted that Plaintiff should avoid concentrated

exposure to extreme heat and cold, fumes, odors, dusts, gases, poor ventilation, and

hazards.  Tr. 164-65.  The ALJ gave Dr. Staley's opinion great weight.[9]  Tr. 179.

Plaintiff contends the ALJ erred by giving great weight to the opinion of Dr.

Staley, a state agency medical consultant who reviewed the record in October

2013, and little weight to Plaintiff's treating and examining providers.  ECF No. 14

at 17-18.  The opinion of a nonexamining physician may serve as substantial

evidence if it is supported by other evidence in the record and is consistent with it.

*Andrews*, 53 F.3d at 1041.  Other cases have upheld the rejection of an examining

or treating physician based in part on the testimony of a nonexamining medical

advisor when other reasons to reject the opinions of examining and treating

physicians exist independent of the nonexamining doctor's opinion.  *Lester*, 81

F.3d at 831 (citing *Magallanes v. Bowen*, 881 F.2d 747, 751-55 (9th Cir. 1989)

(reliance on laboratory test results, contrary reports from examining physicians and

testimony from claimant that conflicted with treating physician's opinion));

---

[9] The ALJ gave great weight to Dr. Staley's opinion in his first decision.  Tr. 179.

The Appeals Council did not disturb the ALJ's findings or assessment regarding

Dr. Staley, and the ALJ adopted and incorporated his assessment and discussion of

Dr. Staley's opinion in his second decision.  Tr. 23.

*Roberts v. Shalala*, 66 F.3d 179, 184 (9th Cir. 1995) (rejection of examining

psychologist's functional assessment which conflicted with his own written report

and test results). Thus, case law requires not only an opinion from the consulting

physician but also substantial evidence (more than a mere scintilla but less than a

preponderance), independent of that opinion which supports the rejection of

contrary conclusions by examining or treating physicians. *Andrews*, 53 F.3d at

1039.

The ALJ found the opinion of Dr. Staley was consistent with Plaintiff's

physical medical records that showed Plaintiff was obese and appeared to have

recovered from her hysterectomy. Tr. 179 (citing Tr. 154-69). Plaintiff suggests

the ALJ should have credited the opinions of Plaintiff's treating and examining

providers over the "stale 2013" opinion of the reviewing doctor. ECF No. 14 at

17. However, as discussed *supra*, the ALJ provided legally sufficient reasons for

giving less weight to the opinions of the treating and examining providers and for

giving more weight to Dr. Staley's opinion. Moreover, although Ms. Fusfield's

opinion as to Plaintiff's physical limitations was more recent as it was rendered on

March 24, 2017, Tr. 2061-63, Dr. Longo issued her opinion on June 26, 2013, Tr.

957, prior to the issuance of Dr. Staley's opinion. ECF No. 14 at 17.

## D.  Other Challenges

Plaintiff raises challenges to the ALJ's evaluation of Plaintiff's mental health providers. ECF No. 14 at 14-21. As discussed *supra*, the ALJ's selective discussion of the mental impairment evidence also informed the ALJ's evaluation of the mental medical opinions. Tr. 22-24, 179-80. Because this case is remanded to reconsider the mental impairment evidence and Plaintiff's symptom testimony, both mental and physical, the Court declines to address these challenges here. On remand, the ALJ is instructed to reconsider the evidence as to Plaintiff's mental impairments and to take testimony from a mental health medical expert. The ALJ shall reconsider Plaintiff's mental and physical symptom testimony and reevaluate the mental medical opinion evidence.

## E.  Remedy

Plaintiff urges this Court to remand for an immediate award of benefits. ECF No. 14 at 21. "The decision whether to remand a case for additional evidence, or simply to award benefits is within the discretion of the court." *Sprague*, 812 F.2d at 1232 (citing *Stone v. Heckler*, 761 F.2d 530, 533 (9th Cir. 1985)). When the Court reverses an ALJ's decision for error, the Court "ordinarily must remand to the agency for further proceedings." *Leon v. Berryhill*, 880 F.3d 1041, 1045 (9th Cir. 2017); *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) ("[T]he proper course, except in rare circumstances, is to remand to the

agency for additional investigation or explanation"); *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014). However, in a number of Social Security cases, the Ninth Circuit has "stated or implied that it would be an abuse of discretion for a district court not to remand for an award of benefits" when three conditions are met. *Garrison*, 759 F.3d at 1020 (citations omitted). Under the credit-as-true rule, where (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand, the Court will remand for an award of benefits. *Revels v. Berryhill*, 874 F.3d 648, 668 (9th Cir. 2017). Even where the three prongs have been satisfied, the Court will not remand for immediate payment of benefits if "the record as a whole creates serious doubt that a claimant is, in fact, disabled." *Garrison*, 759 F.3d at 1021.

Here, it is not clear from the record that the ALJ would be required to find Plaintiff disabled if all the evidence were properly evaluated. Even if the ALJ were to fully credit Plaintiff's symptom testimony, the evidence would still present outstanding conflicts for the ALJ to resolve. First, as discussed *supra*, the ALJ provided legally sufficient reasons to discount the opinions of Plaintiff's treating

providers as to her physical limitations.  Second, the ALJ selectively discussed the mental impairment evidence of record, specifically Plaintiff's mental status examination results and mental health treatment notes.  Tr. 22-23.  In rejecting the opinions of Plaintiff's treating and examining mental health providers, the ALJ found, in part, that their opinions were not consistent with mental status examination results and treatment notes.  Tr. 23-24, 180.  Further, the ALJ credited the opinions of nonexamining psychological consultants Drs. Gollogly and Kraft, who opined that Plaintiff was capable of performing a range of sedentary work, while assigning some or little weight to Plaintiff's treating and examining mental health providers.  Tr. 23-24, 180.  Therefore, further proceedings are necessary for the ALJ to reconsider Plaintiff's symptom testimony and reevaluate the mental health medical opinion evidence.  On remand, the ALJ is instructed to reconsider the evidence of Plaintiff's mental impairments, take testimony from a mental health medical expert, reconsider Plaintiff's mental and physical symptom testimony, and reevaluate the mental medical opinion evidence.

# CONCLUSION

Having reviewed the record and the ALJ's findings, the Court concludes the ALJ's decision is not supported by substantial evidence and free of harmful legal error. Accordingly, **IT IS HEREBY ORDERED**:

1. The District Court Executive is directed to substitute Andrew M. Saul as the Defendant and update the docket sheet.

2. Plaintiff's Motion for Summary Judgment, **ECF No. 14**, is **GRANTED**.

3. Defendant's Motion for Summary Judgment, **ECF No. 15**, is **DENIED**.[10]

//

//

//

//

//

//

//

//

---

[10] As indicated in footnote 4, Defendant's motion for summary judgment is pending as ECF No. 15. However, Defendant filed an and amended motion for summary judgment, ECF No. 16 and ECF No. 16-1.

ORDER - 45

4. The Clerk's Office shall enter **JUDGMENT** in favor of Plaintiff REVERSING and REMANDING the matter to the Commissioner of Social Security for further proceedings consistent with this recommendation pursuant to sentence four of 42 U.S.C. § 405(g).

The District Court Executive is directed to file this Order, provide copies to counsel, and **CLOSE THE FILE**.

DATED January 21, 2020.

*s/Mary K. Dimke*
MARY K. DIMKE
UNITED STATES MAGISTRATE JUDGE

ORDER - 46